IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HONORABLE JOHN CONYERS, JR., *et al.,* ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action 2:06-CV-11972 |
| ) | Judge Edmunds |
| GEORGE W. BUSH, *et al.,* ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

MOTION TO DISMISS OF DEFENDANTS BUSH, JOHANNS,
GUTIERREZ, SPELLINGS, LEAVITT, CHERTOFF
JACKSON, MINETA, SNOW, BELT, AND MECHAM

Defendants George W. Bush, Mike Johanns, Carlos Gutierrez, Margaret

Spellings, Michael O. Leavitt, Michael Chertoff, Alphonso Jackson, Norman Mineta,

John Snow, Bradley D. Belt,[1] and Leonidas Ralph Mecham, by their undersigned

attorneys, hereby move to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6), Federal

Rules of Civil Procedure.

---

[1] Mr. Belt was sued in his official capacity as Chief Operating Officer of the Pension Benefit Guaranty Corporation ("PBGC"), a position he no longer holds. By operation of Rule 25(d), Fed. R. Civ. Proc., his successor may be substituted as a defendant. (Vincent K. Snowbarger is acting Executive Director.) However, since the PBGC is a body corporate that can sue and be sued in its own name, 29 U.S.C. § 1302(b)(1), it would be more appropriate to substitute the PBGC as defendant. Defendants anticipate addressing the question of the appropriate substitution for Mr. Belt by stipulation or motion in the near future.

The grounds for this motion are that the Court lacks jurisdiction over the subject matter of this action and that the complaint fails to state a claim upon which relief can be granted.

In support of this motion the Court is respectfully referred to the memorandum submitted herewith.

Pursuant to Local Rule 7.1(a), the undersigned have contacted counsel for plaintiffs and is advised that plaintiffs' counsel are not in a position to consent to this motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

STEPHEN J. MURPHY
United States Attorney

*Brian G. Kennedy*
Sheila M. Lieber
Brian G. Kennedy (D.C. Bar 228726)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7204
Washington, D.C.  20530
Tel.: (202) 514-3357; Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov

Attorneys for Defendants Bush, Johanns,
Gutierrez, Spellings, Leavitt, Chertoff,
Jackson, Mineta, Snow, Belt & Mecham

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HONORABLE JOHN CONYERS, JR., *et al.,* ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action 2:06-CV-11972 |
| ) | Judge Edmunds |
| GEORGE W. BUSH, *et al.,* ) | |
| ) | |
| Defendants ) | |
| _____) | |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS BUSH, JOHANNS, GUTIERREZ, SPELLINGS, LEAVITT,
<u>CHERTOFF, JACKSON, MINETA, SNOW, BELT, AND MECHAM</u>

<u>Statement of the Issues Presented</u>

1.  Whether plaintiffs have standing to challenge a statute that they do not allege injures them substantively, based on an alleged injury to their interests as Members of Congress in being able to vote and deliberate on legislation?

2.  Whether the attestation by the Speaker of the House and President *pro tempore* of the Senate that an Act has passed Congress is complete and unimpeachable evidence that the Act passed both houses of Congress?

3.  Whether, assuming *arguendo* that evidence beyond the attestation may be considered, the Deficit Reduction Act of 2006 passed both houses of Congress?

4.  Assuming *arguendo* that one provision of the Deficit Reduction Act did not pass both houses of Congress in an identical form, whether the remainder of the Act is severable from that provision?

Controlling Authorities

Issue 1 (Standing):

*Baird v. Norton*, 266 F.3d 408 (6th Cir. 2000)

*Raines v. Byrd*, 521 U.S. 811 (1997)

Issue 2 (Conclusive Effect of Attestation):

*Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892)

Issue 3 (Passage of Deficit Reduction Act in Both Houses):

151 CONG. REC. S14221 (Dec. 22, 2005)

152 CONG. REC. H37, H68 (February 1, 2006)

Issue 4 (Severability):

*Alaska Airlines v. Brock*, 480 U.S. 678 (1987)

Statement of the Case

Plaintiffs are eleven members of the United States House of Representatives. Complaint ¶¶ 9-19.  Plaintiffs claim that the Deficit Reduction Act of 2005 ("the Act" or "the Deficit Reduction Act"), Pub. L. No. 109-171, 120 Stat. 4, is invalid because it did not pass the House in the form in which it was enrolled as a Public Law.  Complaint ¶¶ 1, 40.  In particular, they argue that one section of the Act, section 5101, as passed by the Senate, set the duration of Medicare payments to rent certain durable medical equipment at 13 months, Complaint ¶ 32; that the House passed a bill setting that duration at 36 months, *id.* ¶ 33; that the Speaker of

the House and President *pro tempore* of the Senate signed an attestation that the bill with the Senate's 13-month provision had passed both houses, *id.* ¶ 38; and that the bill so attested was presented to and signed by the President, *id.* ¶¶ 38-40, 43.

Plaintiffs argue that they are "disenfranchised from being able to carry out their constitutional responsibilities and duties by the manner in which" the Deficit Reduction Act was enacted. *Id.* ¶ 2.

Argument

1.     Summary of Argument

Plaintiffs lack standing. They do not allege that they are renters of durable medical equipment covered by section 5101 or that they are in any way personally affected or injured by that or any other provision of the Act. Instead, they appear to claim injury solely with respect to their alleged "disenfranchise[ment]" as members of Congress. Even if that were so, that kind of injury does not qualify as "personal" injury sufficient to sustain standing. *Raines v. Byrd*, 521 U.S. 811 (1997); *Baird v. Norton*, 266 F.3d 408 (6th Cir. 2000).

Even if plaintiffs had standing, their claims would fail on the merits.

First, they admit that the Speaker of their House joined with the President *pro tempore* of the Senate in attesting that the Act did pass both houses. Complaint ¶ 38. That attestation is "complete and unimpeachable" authentication that

-3-

the Act passed both houses of Congress.  *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892).

Second, if other evidence concerning the Act's passage were competent to be considered notwithstanding *Marshall Field*, such evidence would show that the House did vote to accept the "Senate amendment," H. Res. 652, 152 CONG. REC. H37 (February 1, 2006), *agreed to*, 152 CONG. REC. H68 (February 1, 2006), that became the Public Law.  The allegedly different version with a 36-month provision on which plaintiffs rely was set out in the House only just after the House had accepted the Senate amendment without qualification, 152 CONG. REC. H69 (February 1, 2006).

Finally, even if the two houses had passed different versions of subsection 5101(a), that subsection would be severable from the other provisions of the Act under the standards set forth in *Alaska Airlines v. Brock*, 480 U.S. 678 (1987), which, like this case, concerned a Bicameralism clause challenge to a statute.

    2.    Plaintiffs Have Not Identified Any Respect In Which The Deficit
             <u>Reduction Act Injures Them And Lack Standing To Bring This Action</u>

The case-or-controversy limitation "is crucial" in maintaining the "'tripartite allocation of power'" set forth in the Constitution." *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1861 (2006).[2]  "If a dispute is not a case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Id.* at

---

[2] *DaimlerChrysler* was quoting *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474 (1982), which was in turn quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968).

1860-61.  The requirement that a plaintiff have standing enforces the Constitution's case-or-controversy requirement.  *Id*. at 1861.  A litigant seeking to demonstrate standing to invoke the authority of the federal courts must show, *inter alia*, that he has sustained "'<u>personal injury</u> fairly traceable to the defendant's allegedly unlawful conduct.'" *Id. quoting Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis supplied).  The injury must be "'concrete and particularized,'" *DaimlerChrysler*, 126 S. Ct. at 1862, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), rather than merely a grievance the putative plaintiff "'suffers in some indefinite way in common with people generally,'" *DaimlerChrysler*, 126 S. Ct. at 1862, *quoting Frothingham v. Mellon*, 262 U.S. 447, 488 (1923).

Plaintiffs do not allege that the Act inflicts upon them any such concrete and particularized personal injury.  They do not allege that Medicare rents durable medical equipment for <u>them</u> and that they <u>personally</u> are affected by the difference between a 13- or 36-month duration for such rentals.  They do not allege that <u>they personally</u> are lessors of durable medical equipment affected by the requirement (Deficit Reduction Act, § 5101(a)(1), 120 Stat. at 37, *amending* 42 U.S.C. § 1395m(a)(7)(A)(ii)), that following the 13-month period they transfer ownership of the equipment to the Medicare beneficiaries.  They do not allege that they are injured by the other Medicare provisions of the Act, such as the provision (§ 5113, 120 Stat. at 44) improving patient access to colorectal cancer screening.  Nor do

they allege that they are injured by any of the non-Medicare provisions of the Act. They do not, allege, for example: that they personally have outstanding student loans and are injured by changes in the student loan program (§§ 8001-8024, 120 Stat. at 155-180); or that they personally are injured by the provision (§ 3010, 120 Stat. at 26) authorizing a national alert and tsunami warning program; or that they personally are Medicaid recipients affected by the provisions (§§ 6001-6087, 120 Stat. at 54-130) amending the Medicaid program; or that they personally are injured by the provision (§ 3005, 120 Stat. at 23) authorizing issuance of coupons to help households purchase digital-to-analog convertor boxes for their televisions.

Instead of arguing that they are in any way personally and concretely injured by the substance of the Act, plaintiffs seek to establish that they were injured as members of Congress, through being "disenfranchised from being able to carry out their constitutional responsibilities and duties by virtue of the manner in which [the Deficit Reduction Act] was enacted."  Complaint ¶ 2 (emphasis supplied).

But, as the Supreme Court explained in another case brought by members of Congress, such a "claim to standing is based on a loss of political power, not loss of any private right, which would make injury more concrete." *Raines v. Byrd*, 521 U.S. 811, 821 (1997).  "For legislators to have standing as legislators . . . they must possess votes sufficient to have either defeated or approved the measure at issue." *Baird v. Norton*, 266 F.3d 408, 412 (6th Cir. 2000).  These plaintiffs do not meet

that standard.  The votes of eleven members of Congress are not sufficient either to enact or to defeat any legislation.[3]

Nor is there any basis for an argument that the alleged discrepancy between the 13-month and 36-month versions of the bill made a difference – even an inconsequential one – to <u>plaintiffs'</u> votes.  Every one of the plaintiffs voted against the bill.  *Compare* 152 Cong. Rec. H68 (Feb. 1, 2006) (vote in House on bill) *with* Complaint ¶¶ 9-19.  They allege that their "nay" votes were on a bill with a 36-month provision, Complaint ¶ 33.  They do not say they would have voted otherwise if they had understood that the bill in fact had the 13-month provision.  Instead, they are seeking in this lawsuit to void that bill.  Thus, they cannot complain that they were fooled into agreeing to a 13-month provision they would have opposed by a misleading or inaccurate representation that they were instead voting for a bill with a 36-month provision.  They were opposed to the bill in either event.

---

[3] Because Baird could not demonstrate that her vote would have been sufficient to defeat the legislation she challenged, the Sixth Circuit's statement in *Baird* that a demonstration of that point would have been enough to supply standing is dictum.  *Byrd v. Raines* left that issue open, indicating that "<u>at most</u>" a prior holding in *Coleman v. Miller*, 307 U.S. 433 (1939) "stands for the proposition that legislators whose votes would have been sufficient to defeat . . . a specific legislative act have standing to sue if that legislative action goes into effect."  521 U.S. at 823 (emphasis supplied).  The D.C. Circuit has indicated that "the very narrow possible *Coleman* exception to *Raines*" is limited to instances, such as ratification of a constitutional amendment involved in *Coleman*, where the legislators (unlike here) have no opportunity to rescind their colleagues' action.  *Campbell v. Clinton*, 203 F.3d 19, 23 (D.C. Cir.), *cert. denied,* 531 U.S. 815 (2000).  Plaintiffs do not meet that standard, since they are free to seek to repeal any or every provision of the Act.

It does not distinguish *Baird v. Norton* for plaintiffs to claim that this is not merely a case where plaintiffs were fairly outvoted on the merits in the political process, but one in which (it is alleged) they were 'disenfranchised" because the very procedures for passing legislation were not followed.  That is the claim to standing rejected in *Baird*, where the plaintiff legislator argued "that the compacts would have been defeated, had the constitutionally required provisions been followed, and thus her vote against the compacts was effectively nullified," 266 F.3d at 413. Because Baird could not "demonstrate that her vote was sufficient to defeat the compacts had the constitutionally required procedure been followed," she lacked standing.  *Id.* (emphasis original); *see also Common Cause v. Pennsylvania*, 2006 WL 1620231 at *12 (M.D. Pa.) (legislator lacked standing to "object[ ] to the alleged usurpation of the powers of elected representatives by a select few of its members who occupy leadership positions").  Plaintiffs' claim that the constitutionally required procedures were not followed by the body to which they belong is similarly one that they have no standing to assert.

Plaintiffs' argument that they have been "disenfranchised" because they were "denied the opportunity to persuade other members" of Congress, Complaint ¶ 47, adds nothing to their claim of standing.  Since what they challenge is an Act of Congress, not a constitutional amendment, all or any of it can be rescinded at any time; plaintiffs still have every opportunity to persuade their colleagues to modify

or repeal any provisions of the Act.  *See Campbell v. Clinton*, 203 F.3d 19, 23 (D.C.

Cir.), *cert. denied*, 531 U.S. 815 (2000).  They have not been "disenfranchised."  And

even if there had been some actual loss of an "opportunity to persuade" members of

Congress, that would be a paradigmatic example of an injury too "widely dispersed,"

*Raines*, 521 U.S. at 829, to support standing.  After all, it is not just members of

Congress who are entitled to try to persuade members of Congress.  A grandmother

with a blog, a lobbyist with a client, a ninth grader with a Civics assignment, and a

picketer with a passion all have the right to seek to persuade members of Congress.

U.S. CONST. amend I.  If it actually were the case that passage of the Deficit

Reduction Act occasioned some loss of an opportunity to persuade members of

Congress, that loss would be widely shared rather than the kind of concrete and

specific loss personal to these plaintiffs necessary to sustain standing.

   Finally, even if plaintiffs had shown that they had sustained some "personal"

and "concrete" injury, that injury is not, as is required, "'fairly traceable to the

defendants' unlawful conduct,'" *DaimlerChrysler*, 126 S. Ct. at 1861, *quoting Allen*

*v. Wright*, 468 U.S. 737, 751 (1984) (emphasis supplied).  Here, the Executive and

Judicial Branch defendants called upon to decide whether the Act is valid are no

more the cause of any injury to plaintiffs than judges who must likewise decide

whether the Act is valid.  The injury, if there was one, arose instead from the

alleged acts of plaintiffs' colleagues in Congress to attest that the bill had passed

Congress, rather than from any acts of defendants. *See Raines*, 521 U.S. at 830 n.11 (indicating, without reaching issue, that it was "far from clear" that injury alleged was fairly traceable to Executive Branch defendants rather than congressional colleagues of plaintiffs).

3.    The Attestation And Authentication Of The Enrolled Bill As Having Passed Congress Is Complete And Unimpeachable

Plaintiffs' claim is squarely foreclosed by *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892). *Marshall Field* answers the precise question of "'the nature of the evidence' the Court would consider in determining whether a bill actually passed Congress." *United States v. Munoz-Flores*, 495 U.S. 385, 391 n.4 (1990), *quoting Marshall Field*, 143 U.S. at 670. *Marshall Field* held that when an enrolled bill has been attested to by the Speaker of the House and President of the Senate, "its authentication as a bill that has passed Congress should be deemed complete and unimpeachable." 143 U.S. at 672. "The respect due to coequal and independent departments requires the judicial department to act upon that assurance and to accept, as having passed congress, all bills authenticated in the manner stated . . . ." *Id.*[4]

_____

[4] *See also, e.g., Leser v. Garnett*, 258 U.S. 130, 137 (1922) (Brandeis, J.) (*Marshall Field* "applicable" to question whether "official notice" of legislative action – adoption of constitutional amendment – that has been "duly authenticated" is "conclusive upon the courts"); *Harwood v. Wentworth*, 162 U.S. 890, 894 (1896) (reaffirming holding of *Marshall Field*); *United States v. Thomas*, 788 F.2d 1250, 1253-54 (7th Cir.) (*Marshall Field* applied to sustain Sixteenth Amendment, despite variances in language among States' instruments of ratification), *cert. denied*, 479 U.S. 853 (1986); *United States v. Sitka*, 845 F.2d 43 (2d Cir.) (same), *cert. denied*,

(continued...)

The importers in that case argued, as plaintiffs do here, that an Act, in that case the Tariff Act of 1890, 26 Stat. 567 (1890), had not in fact passed both houses of Congress; indeed, the importers argued that the Tariff Act had passed <u>neither</u> house of Congress in the form in which it was nevertheless enrolled into law.  *See Marshall Field*, 143 U.S. at 668-69.[5]  However, the Supreme Court squarely rejected

---

[4](...continued)
488 U.S. 827 (1988); *Washington State Grange v. Locke*, 153 Wash. 2d 475, 499-501, 105 P.3d 9, 22-23 (2005) (enrolled bill conclusive as matter of state law); *Birmingham-Jefferson Civic Center Auth. v. City of Birmingham*, 912 So. 2d 204, 219-21 (Ala. 2005) (same); *Medical Soc'y of South Carolina v. Medical Univ. of South Carolina*, 334 S.C. 270, 278, 513 S.E.2d 352, 356-57 (1999) (same); *but see, e.g., Ass'n of Texas Professional Educators v. Kirby*, 788 S.W.2d 827 (Texas 1990) (allowing some evidence to contradict enrolled bill as matter of state law); *Gwynn v. Hardee*, 92 Fla. 543, 110 So. 343 (1926) (same).

[5] The importers contended that a bill originated in the House and contained a rebate for a tobacco tax; that, as one of hundreds of Senate amendments, the tobacco tax rebate was deleted when the Senate passed the bill; that the Senate receded from that deletion of the tobacco tax rebate amendment in conference; that each house receded in conference from many other provisions; that both houses accepted the bill as it came out of conference; and that the tobacco tax rebate provision was omitted from the Act as enrolled.  Brief for Appellants at 3, 7, 48, 59, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891); Reply Brief for Appellants at 4, 50-52, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891).

The point of the importers' argument was not that the conference committee bill that they alleged did pass both houses with the tobacco tax rebate was law instead of the enrolled bill without the rebate, but rather (as plaintiffs claim here) that there was no valid law at all.  (The importers were trying to avoid a tariff on clothing, *see* 143 U.S. at 662-63, rather than to obtain a tobacco tax rebate.)  The Constitution requires that "before [a bill] become[s] a law" it must be "presented to the President."  U.S. CONST. art. I, § 7.  The alleged conference committee bill that the importers contended had passed both houses was not so presented.

-11-

any attempt to impeach the accuracy of the attestations represented by the enrolled bill:

> [I]t is not competent . . . to show, from the journals of either house, from the reports of committees, or from other documents printed by authority of congress, that the enrolled bill, . . . as finally passed, contained a section that does not appear in the enrolled act in the custody of the state department.

143 U.S. at 680.

Here, plaintiff alleges (and defendants agree) that "House Speaker Dennis Hastert and President *Pro Tem* of the United States Senate, Ted Stevens, signed a statement attesting that the bill signed by the President had been passed by both the United States House and the United States Senate."  Complaint ¶ 38.  Under the holding of *Marshall Field*, that authentication is "complete and unimpeachable," 143 U.S. at 672.  Plaintiffs' complaint, which turns on, and would require, a finding that the Act did not in fact pass the House, must therefore be dismissed. *OneSimpleLoan v. Secretary of Education*, 2006 WL 1596768 at * 9 (S.D.N.Y.) (*Marshall Field* requires dismissal of similar bicameralism challenge to Act), *motion for expedited appeal granted, temporary stay denied, and request for stay referred to motions panel*, No. 06-2770 (2d Cir. June 16, 2006).

4.      Even If The Enrolled Bill Were Not Complete And
Unimpeachable Evidence That The Deficit Reduction Act Passed
<u>Both Houses Of Congress, Both Houses Did Pass The Same Act</u>

Even if the enrolled bill rule of *Marshall Field* were to be disregarded, and it were appropriate to look beyond the conclusive evidence of the enrolled bill to determine whether a bill passed both houses of Congress, it would be apparent that the same bill did pass both houses of Congress before being presented to the President and signed into law.

First, plaintiffs admit that the "version" of the bill "signed by the President" was also "passed by the Senate." Complaint ¶ 1. *See also id.* ¶¶ 32, 37, 39 ("bill presented to the President reflected the Senate bill") ; 151 CONG. REC. S14221 (Dec. 22, 2005) (Senate passage of bill).

Second, <u>after</u> the Senate passed that Senate-amended bill that ultimately became the law, the House voted to "concur in the Senate amendment to the House amendment," H. Res. 652, 152 CONG. REC. H37 (February 1, 2006), *agreed to*, 152 CONG. REC. H68 (February 1, 2006). Thus, both houses did pass the same bill, and that bill was presented to the President.

Apparently, however, plaintiffs will argue that the "Senate amendment" the House concurred in was not the Senate amendment. And the House did set out in the *Congressional Record* an alleged text of the Senate amendment that included a 36-month period in subsection 5101(a) – *i.e.*, the bill plaintiffs argue passed the

House – rather than what plaintiffs concede and contend (Complaint ¶ 32) was the actual Senate amendment with a 13-month period.  However, the House did not set out the erroneous 36-month text purporting to be the Senate amendment in the *Congressional Record* until just <u>after</u> the House had concurred in the Senate amendment without qualification.  *Compare* 152 CONG. REC. H68 (Feb. 1, 2006) (vote in House to concur in Senate amendment) *with* 152 CONG. REC. H69 (Feb. 1, 2006) (setting out erroneous text as Senate amendment).  Plaintiffs may argue that the erroneous text of the Senate bill, having been set forth in the Senate engrossed bill, <u>was</u> the Senate amendment as far as the House and the House vote was concerned since the contents of an engrossed bill sent by one house (here the Senate) to the other should be treated as conclusive evidence (although in this case erroneous evidence) of what was voted on in the transmitting house.  But if, as we are assuming *arguendo* throughout this section, *Marshall Field* is no longer to be followed and the President and Judiciary no longer may or must treat the enrolled bill as conclusive, then plaintiffs cannot insist on giving an engrossed bill the conclusive weight their own argument would deny to an enrolled bill.  If the President and the Judiciary are no longer entitled and required to accept the attestation of the enrolled bill as conclusive evidence of what passed both houses of Congress, then plaintiffs and the other House members were similarly not entitled to rely on the Senate engrossed bill as conclusive evidence of what the "Senate amendment" they

-14-

were voting on actually was.  Had plaintiffs wished to specify that they were voting on a bill with a 36-month period, they should have so specified <u>before</u> the vote.

5.    Subsection 5101(a) Of The Deficit Reduction Act Is Severable
       <u>From Section 10001 And The Other Provisions Of The Act</u>

The <u>only</u> discrepancy between the House and Senate versions of the bills that plaintiffs allege, Complaint ¶ 32, relates to Section 5101 of the Act, which concerns Medicare beneficiary ownership of certain durable medical equipment. Since that provision is severable from the remaining provisions of the Act, insofar as plaintiffs challenge other provisions of the Act, the complaint must be dismissed.

Courts must "'refrain from invalidating more of the statute than is necessary.'" *United States v. Booker*, 543 U.S. 220, 258 (2005), *quoting Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984); *accord, e.g., Alaska Airlines v. Brock*, 480 U.S. 678, 684 (1987).  Thus, even when a portion of an Act is found to be unconstitutional, the courts should and must allow to stand those portions of the Act that are themselves (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress' basic objectives in enacting the statute.  *Booker*, 543 U.S. at 258-59.  "'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.'"[6]

_____

[6] *Alaska Airlines v. Brock*, 480 U.S. 678, 684 (1987), *quoting Buckley v. Valeo*, 424 U.S. 1, 108 (1976) (per curiam), *quoting Champlin Refining Co. v. Corp.*
(continued...)

Under those standards, section 5101 of the Act, the only provision that allegedly did not pass both houses in identical form, is plainly severable from the remaining provisions of the Act.  Though they evidently disagree with some or all of the Deficit Reduction Act as a matter of policy, plaintiffs make no argument that Congress lacks the constitutional authority to pass the other provisions of the Act.  Those other provisions – such as aid to States affected by Hurricane Katrina (section 6201), other changes in the Medicaid program (sections 6001-6087), the Digital Television Transition and Public Safety Act (title III of the Deficit Reduction Act), changes in the student loan program (sections 8001-8024), and provisions on FHA asset disposition (section 2001) – are all manifestly capable of functioning independently of the rules on Medicare beneficiary ownership of durable medical equipment, and are consistent with the basic statutory objectives.  Nor, finally, is it "evident" that Congress would have refrained from enacting the other provisions of the Act that have nothing to do with Medicare durable medical equipment reimbursement if it had known that section 5101 was invalid.

Indeed, not only are the non-Medicare provisions of the Act severable, but the Medicare provisions are also severable.  Although plaintiffs say that the discrepancy is in "[s]ection 5101," Complaint ¶ 32, the only discrepancy they allege is in subsection (a) of that section.  Even subsection (b) of that very section, 120 Stat. at

---

[6](...continued)
*Comm'n*, 286 U.S. 210, 234 (1932).

38-39, is severable under the standards of *Booker* and *Alaska Airlines*.  Both sub-sections deal with Medicare payments for rental of equipment and provide for transfer of ownership of title to the beneficiaries, but they deal with different kinds of equipment and provide for different treatment (subsection (b) equipment is sub-ject to a 36-month period).  Implementation of subsection (b) is in no way dependent upon whether subsection (a) is or is not implemented; if anything, if Congress had known in advance that subsection (a) would be invalidated, it would have had all the more reason to pass subsection (b) and the other deficit-reducing provisions of the Act.

Plaintiffs may object that severability standards developed in cases where one section violates a substantive command of the Constitution do not apply where the procedural requirement of the Bicameralism clause is violated, since, plaintiffs might argue, a failure of the texts passing each house to match in any single par-ticular means that no part of the bill has ever become a law at all.  And there are some state cases that do seem to apply that kind of formalistic extremism to severa-bility issues arising under state constitutions.[7]

But that formalistic extremism is inconsistent with the general approach of the federal courts to severability.  Obviously, a federal case on all fours with this

---

[7] *E.g.*, *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 864 P.2d 1161 (1993); *Ass'n of Texas Professional Educators v. Kirby*, 788 S.W.2d 827, 830-31 (Texas 1990) (alternative holding); *State ex. rel Foster v. Naftalin*, 246 Minn. 181, 74 N.W.2d 249 (1956).

one could not have arisen subsequent to *Marshall Field*. However, in the last case

before *Marshall Field*, the proceedings below in *Marshall Field* itself, the challenged

clothing tariff provision was upheld because it was severable from the tobacco tax

rebate provision that gave rise to the alleged bicameralism violation.[8]  And in

*Alaska Airlines v. Brock*, 480 U.S. 678 (1987), the Supreme Court unanimously held

that a one-house veto provision, *i.e.*, a bicameralism violation,  was severable from

the remainder of the Act.  *See also INS v. Chadha*, 462 U.S. 919, 931-35 (1983)

(same, but not unanimous); *Gwynn v. Hardee*, 92 Fla. 543, 556, 110 So. 343, 347

(1926) (accepting proof that enrolled act contained provisions not passed by both

houses, but holding remainder of act severable and valid); *State v. Van Duyne*, 24

Neb. 586, 39 N.W. 612 (1888) (same); *Berry v. Baltimore & Drum Point R. Co.*, 41

Md. 446 (1875) (same); *Loomis v. Callahan*, 196 Wis. 518, 220 N.W. 816, 820 (1928)

("It would be a strict, harsh, and senseless rule that would condemn the entire act

because the Senate consented to the elimination of amendment No. 2S without a

---

[8] The circuit courts affirmed the decision of the Board of General Appraisers for the reasons given in the Board's opinion, *In re Sternbach*, 45 F. 175 (C.C.S.D.N.Y. 1891), *aff'd on other grounds sub nom. Marshall Field & Co. v. Clark*, 143 U.S.  649 (1892), or without different explanation, Transcript of Record at 31, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891) (opinion of Circuit Court for the Northern District of Illinois).  The Board's opinion was squarely grounded on the severability of the remaining provisions of the tariff from the tobacco tax rebate provision.  Transcript of Record at 11, 13-15, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891).  (The name of the Board of General Appraisers was later changed to the Customs Court, *see Ex Parte Bakelite Corp.*, 279 U.S. 438, 457 (1929).)

yea and nay vote"); *People ex. rel Brady v. LaSalle St. Trust & Savings Bank*, 269 Ill. 518, 523, 110 N.E. 38, 40 (1915) ("The fact that one section of an act of the Legislature was not passed in the manner prescribed by the Constitution does not, alone, have the effect of destroying the validity of the remaining sections").

After all, <u>whenever</u> the courts hold that an unconstitutional provision may be severed from the remainder of a statute on <u>any</u> ground, the remainder of the statute is <u>by definition</u> not a statute that passed both houses of the legislature. The federal courts nevertheless will routinely sever an unconstitutional section from a statute and enforce the remaining sections even though neither house of Congress – let alone both – ever passed a statute containing the remaining constitutional sections and those sections only. If the Bicameralism clause does not forbid severability in those instances, it likewise does not forbid it here.

There is indeed no good reason why the Court should not apply, in the case of an alleged bicameralism violation, the same principles of severability that it applies with respect to other constitutional provisions. When those rules are applied, it is clear that subsection 5101(a), the Medicare durable medical equipment provision, the only provision that provides any basis for an argument that the Act is unconstitutional, is severable from the remaining provisions of the Act.

-19-

<u>Conclusion</u>

For the reasons stated above, the motion to dismiss of defendants Bush,

Johanns, Gutierrez, Spellings, Leavitt, Chertoff, Jackson, Mineta, Snow, Belt, and

Mecham should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

STEPHEN J. MURPHY
United States Attorney

*<u>Brian G. Kennedy</u>*
Sheila M. Lieber
Brian G. Kennedy (D.C. Bar 228726)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7204
Washington, D.C.  20530
Tel.: (202) 514-3357; Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov

Attorneys for Defendants Bush, Johanns,
Gutierrez, Spellings, Leavitt, Chertoff,
Jackson, Mineta, Snow, Belt & Mecham

CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion to dismiss of defendants Bush,

Johanns, Gutierrez, Spellings, Leavitt, Chertoff, Jackson, Mineta, Snow, Belt, and

Mecham, and the memorandum in support of that motion were served this 27th day

of June, 2006, as follows:

Through the Notice of Electronic Filing (NEF) provided by the Court's

Electronic Filing System on:

> Richard J. Landau
> Dykema Gossett (Ann Arbor)
> 2723 S. State Street
> Suite 400
> Ann Arbor, MI 48104-6188
>
> and
>
> Thomas Holzman
> Federal Deposit Insurance Corp (Arlington)
> 3501 N. Fairfax Dr.
> Arlington, VA 22226

By First-Class Mail, postage prepaid, upon:

> Elliott Hall
> Dykema Gossett (Detroit)
> 400 Renaissance Center
> Detroit, MI 48243-1668
> 313-568-6800

-1-

and

Erwin Chemerinsky
Duke University School of Law
Science Drive and Towerview Road
Durham, N.C. 27708

*Brian G. Kennedy*
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7204
Washington, D.C.  20530
Tel.: (202) 514-3357; Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov